## PEIRCE-SMITH CONVERTER CO. v. UNITED VERDE COPPER CO.

(District Court, D. Delaware. August 3, 1923.)

No. 377.

**1. Words and phrases; "copper matte" defined.**

"Copper matte" is a product obtained by smelting copper sulphide ores, and is mainly cuprous sulphide, with a varying quantity of ferrous sulphide.

**2. Words and phrases; "bessemerizing" defined.**

"Bessemerizing" is a process by which copper relatively pure is obtained from matte. It is carried on in a large vessel, a converter, into which the molten matte obtained from the smelter and a quantity of silicious flux are placed, and consists of forcing large volumes of air into the inlets, twyers, of the converter, into and through the molten matte. The iron burns to an oxide, and unites with the flux to form a fluent, floating iron-silicate slag. The sulphur unites with the oxygen and passes off in the form of gas, sulphur dioxide, and copper remains.

**3. Words and phrases; "bessemerizing process" may be either acid or basic; "basic converter;" "acid lined converter."**

The "bessemerizing process" is either acid or basic, according to the nature of the lining of the steel shell of the converter; the "basic converter" being lined with nonfluxing material, and all the flux being supplied through the mouth of the converter, the sole purpose being to protect the shell of the converter; but an acid lined converter is one in which the flux silica is in whole or in large part supplied by the lining, the protection of the shell being only its incidental or secondary purpose.

**4. Patents ⬥328—Smith patent, No. 943,280, held valid and infringed.**

Claims 1, 2, and 3, Smith patent No. 943,280, for improvements in bessemerizing copper matte, *held* valid and infringed.

**5. Equity ⬥67—"Laches" is not mere lapse of time.**

"Laches" is not like limitation, a mere lapse of time, but is principally a question of the inequity of permitting a claim to be enforced because of some change in the condition or relations of the parties or the property.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Laches.]

**6. Patents ⬥289—Laches held not good defense to suit for infringement.**

One who began using a patented process without leave of the patentee or his assignee, after being advised by counsel of probable infringement, cannot set up laches as a defense to an action for infringement and equitable relief by reason of an enlargement of infringing operations.

In Equity. Suit by the Peirce-Smith Converter Company against the United Verde Copper Company. Decree for plaintiff.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Livingston Gifford, William H. Davis, Merton W. Sage, and John F. Neary, all of New York City, for plaintiff.

Charles Neave, Edward L. Blackman, and Maxwell Barus, all of New York City, for defendant.

MORRIS, District Judge. Peirce-Smith Converter Company charges United Verde Copper Company with infringement of claims 1, 2, and 3 of Smith patent, No. 943,280, granted December 14, 1909, for improvements in bessemerizing copper matte, and seeks the usual relief in equity. The defenses are invalidity, noninfringement, and laches. Final hearing has been had upon bill, answer, documentary evidence, and testimony taken in open court.

[1] Copper matte is a product obtained by smelting copper sulphide ores. It is mainly cuprous sulphide, with a varying quantity of ferrous sulphide. Bessemerizing is a process by which copper relatively pure is obtained from the matte. It is carried on in a large vessel, a converter, into which the molten matte, obtained from the smelter, and a quantity of silicious flux, are placed. It consists of forcing large volumes of air through the inlets, twyers, of the converter, into and through the molten matte. The iron burns to an oxide and unites with the flux to form a fluent, floating iron-silicate slag. This is poured off. The sulphur unites with the oxygen and passes off in the form of gas—sulphur dioxide. The copper remains.

[2, 3] The bessemerizing process is either acid or basic, according to the nature of the lining of the steel shell of the converter. The basic converter is lined with nonfluxing material, all the flux being supplied through the mouth of the converter. The sole purpose of the basic lining is to protect the shell of the converter. Hence durability is of prime importance. An acid lined converter is one in which the flux—silica—is in whole or in large part supplied by the lining, that being the acid lining's main purpose; protection of the shell of the converter being only its incidental or secondary purpose. Consequently acid linings were quickly consumed and have to be renewed, at much expense and delay, after converter operations of only a few hours' duration. Prior to the year 1909 the process of bessemerizing copper was carried on commercially in acid lined converters exclusively. The desirability of using a basic lined converter and introducing the necessary silica by some means other than the destruction of the lining, with its resultant expense and delay, had been recognized since the introduction of the bessemer process in treating copper matte.

Numerous attempts were made during that whole period to conduct successfully the bessemerizing of copper matte in a basic lined converter. Apart from the too rapid destruction of the lining, this was accomplished at least as early as June 13, 1908, the date upon which Peirce and Smith applied for a patent for improvements in method of and converter vessels for bessemerizing copper matte. Patent No. 942,346 therefor was issued to them December 7, 1909. The rapid destruction of the lining needed to be overcome. Smith ascertained the cause and found a remedy. These he states in his patent in suit thus:

"In carrying out on a commercial scale, the bessemerizing of copper matte in a converter having a noncorrodible lining, and with the employment of an acid flux, I have ascertained that the integrity of the lining is further endangered by the action of the slag produced during the operation, unless the process is conducted under such conditions, hereinafter specified, as will insure against the attack of the slag upon the lining. These conditions may be briefly summarized as consisting in so proportioning the amount and character of the silicious flux added to the bath of molten matte to be bessemerized to the volume of the air last admitted during the smelting blow that the silicious flux will not only fully subserve its function of fluxing the iron and of adding its own content of matte-forming material to the bath, but will form a thin and fluent slag, capable of being readily poured off and producible at such a temperature that it will not substantially attack the noncorrodible lining."

He likewise specifies that the molten matte put into the converter is of a volume sufficient to retain its fluidity as against losses of heat by radiation during the blow.

Claim 1 may be considered typical of the three claims in suit. It is:

"The method of bessemerizing copper matte in a converter having a noncorrodible lining with the employment of an acid flux, which consists in forming a molten bath of matte in the converter of such volume as to retain its fluidity as against losses by radiation during the blow, and so proportioning the amount and composition of the flux to the volume of air blast admitted that at the termination of the blow there will result a thin and fluent slag at a temperature insufficient to substantially attack the lining, substantially as described."

[4] The defense of invalidity is predicated upon the prior art and the asserted insufficient, misleading, and deceptive character of the specification. The prior art relied upon is the acid lined converter process and the disclosures in patent to Baggaley, No. 746,260, for a method of recovering values from silicious ores, patent to Baggaley and Allen, No. 766,654, for a method of recovering values from ores by dissolving in molten baths, and an article by Heywood in the Engineering & Mining Journal of March 24, 1906, entitled "The Baggaley Pyritic-Conversion Process."

A thorough understanding of the patent in suit is essential to a like understanding of its relation to the prior art. The patent in suit does not purport to contain the first disclosures of how to bessemerize matte in a basic converter, otherwise than with respect to the preservation of the basic lining. In fact, the discovery of the evil for which the patent prescribes a remedy occurred in carrying out on a commercial scale the bessemerizing of copper matte with an acid flux in a converter having a basic lining. That evil was the too rapid destruction of the basic lining during the bessemerizing process. Specifically Smith's problem was how to conduct the bessemerizing process—not another process—in a basic converter without substantial injury to the lining. His solution was not the substitution of a new process for the bessemerizing process, but was in recognition of that process with all its fundamental steps and principles, including the forcing of air through molten matte in the presence of an acid flux, a resulting heat sufficient to drive off the sulphur and to bring about the union of iron oxide and silica to form a slag, and the formation of slag. The process of Smith's patent, though fundamental in principle and receiving

immediate general adoption in the converter art, is a mere improvement in the manner of performing that underlying process.

Consequently, with the exception of how to conduct the bessemerizing process in a basic converter without substantial injury to the lining, we must expect to find in the prior art full disclosures for conducting the bessemerizing process in both the acid and the basic converter. With these we are not directly concerned. We need to focus our attention only upon the matters, if any, that show that Smith's method of protecting the basic lining from substantial injury lacks patentable novelty. His method consists of placing in the basic converter matte of volume sufficient to retain fluidity during the blow, and proportioning the amount and composition of the added flux to the volume of air blast admitted. His patent is not a temperature patent. It is broader and more fundamental. Proportioning the amount and composition of the flux to the volume of air blast admitted manifestly controls, not only the temperature of the converter content, but also its chemical composition and physical properties. Consequently the patent, in calling for the proportioning of the amount and composition of the flux to the volume of air blast admitted, obviously and inevitably calls for a correlation of temperature, chemical composition, and physical properties of the contents of the converter. The claims are broad enough to cover proper and effective correlation at whatever temperature it may be brought about.

This interpretation of the patent makes unnecessary, I think, a detailed analysis of the prior art. Owing to the excess of silica always present in the acid lined converter, such correlation of temperature, chemical composition, and physical property of the contents of the converter as is necessary to protect a basic lining could not be brought about in the proper operation of an acid converter, nor was there in the acid converter process or practice anything to suggest to those having only the skill of that art that such correlation would prevent the destruction of a nonacid lining. However instructive the disclosures of the Baggaley and the Baggaley and Allen patents may have been in arriving at a method of bessemerizing copper matte in basic converters, they fail utterly, in my opinion, to suggest the Smith idea of proportioning the amount and composition of flux to the volume of air. Moreover, as Smith's idea was to find a method of so conducting the bessemer process as to preserve a basic lining, the tendency of the Baggaley disclosures would be to lead Smith away from the result ultimately obtained by him, for, with respect to the preservation of the basic lining, the Baggaley manner of protecting the lining was by the external application of air or water. The Heywood publication, likewise relied upon by the defendant, is, in my opinion, also barren of any disclosures tending to negative novelty or invention in the Smith improvement. Proportioning the amount and composition of the flux to the volume of air blast admitted was, so far as disclosed by the record, an idea wholly new in connection with the bessemerizing of copper matte and its discovery required inventive skill of high order.

Are Smith's disclosures sufficient to support his claims? His specification is elaborate, and covers in much detail the whole bessemerizing

process, as conducted in a basic converter, with a view to general successful operation, as well as to preservation of the lining. The defendant, however, finds four faults therewith. One is that a basic lining is best protected by a coating of magnetic oxide of iron, magnetite (probably $Fe_3O_4$, or a mixture of $Fe_2O_3$ and $Fe_3O_4$), obtained by having in the flux insufficient silica to unite with or satisfy all the iron of the matte, and by additional blowing of air converting the FeO unsatisfied by silica into $Fe_2O_3$ or $Fe_3O_4$; that Smith knew that at times a magnetite coating was formed under his process, yet drafted his specification in such manner as to lead one to avoid making magnetite. The art has recognized, and it cannot now be disputed, that a basic lining is best protected from substantial attack when the converting operation is so conducted that a magnetite lining is formed and retained at all times upon the original basic lining. Nor can it be denied that Smith obtained, prior to his application for the patent in suit, at least at times, a magnetite coating by his process. But I cannot acquiesce in the view that his specification leads one to avoid making magnetite. I think the desirability and the method of forming magnetite during the converter operation are both disclosed in the patent at page 2, lines 20 to 44. The portion of the specification relied upon by the defendant, page 3, lines 35–40, deals only with "additional"—that is, excess—magnetite.

The defendant next contends that the patent misstates the temperature range for successful operation. Yet it is elsewhere conceded that, a magnetite coating having been formed, it is possible to operate at almost any reasonable temperature merely "by controlling the amount of ferrous silicate and magnetite in the slag." That, of course, is but another way of saying that the thickness of the magnetite coating may be maintained by a proper correlation of the temperature, chemical composition, and physical properties of the contents of the converter—the Smith process. The temperature ranges given in the specification are merely to show the temperature range within which the proper correlation may be best brought about. The record discloses that the normal operation of copper conversion is carried on within the range set out in the specification. I think the specification not misleading in that particular.

The defendant charges that the patent in suit does not teach the operator to change the composition of the flux to control the temperatures. It does, however, expressly instruct him to proportion the amount and character of the silicious flux added to the bath of molten matte to be bessemerized to the volume of the air blast admitted during the smelting blow. This instruction may be carried out either by using a flux of a definite amount and composition and adjusting the volume of air or vice versa. The former is used as the illustration of the patent.

The defendant lastly contends that the expression of the desirability of obtaining "like slags throughout the entire smelting conversion," "within say a few per cent. one way or the other," leads away from the maintenance of a protective magnetite coating. I think not. Clearly uniformity of slag content is a mere incident, and not the primary purpose, of the Smith process. The patent does not state that absolute

uniformity may be obtained. Moreover, the record does not disclose that a skilled operator, familiar with the general character and behavior of the matte, flux, and air used, may not obtain slags of relatively uniform content, and still preserve an adequate magnetite coating upon the basic lining. I think the specification adequately supports the claims.

Does the defendant infringe? In view of the interpretation herein placed upon the patent in suit, this matter needs little consideration. Broadly speaking, the defendant contends that it operates under the Wheeler and Krecji patent, No. 1,068,470, and not under the patent in suit; but, as I understand the Wheeler and Krecji patent, it does not disclose a process different in principle from that of Smith, but is merely an improvement in the technique or method of conducting the Smith process. It is not disputed that the defendant carries on the process of bessemerizing copper matte in a converter having a magnesite lining with the employment of an acid flux; that it forms a molten bath of matte in the converter of such volume as to retain its fluidity as against losses by radiation during the blow; that it proportions the amount and composition of the flux to the volume of air blast admitted; that it obtains a thin and fluent slag; and that by those steps the life of the lining of the converter is greatly prolonged. Such process is clearly within the Smith claims as hereinbefore interpreted.

The defendant says, however, that before it begins the bessemerizing operation it blows a charge of matte without flux, and by so doing produces sufficient magnetite to cover the magnesite lining several inches in thickness, and that consequently its bessemerizing operation is carried on with a magnetite lining, and that such lining is not "noncorrodible," as called for by Smith's claims. The specification, however, expressly states (page 4, lines 61 to 64) "that by the expression 'noncorrodible lining' as employed in the specification and claims, I mean a lining of a nonacid character." Magnetite is of a nonacid character, and so "noncorrodible," as that term is used in the claims.

[5, 6] The remaining defense is that of laches. Laches is not like limitation, a mere lapse of time, but is principally a question of the inequity of permitting a claim to be enforced because of some change in the condition or relations of the parties or the property. Basic converting was begun by the defendant in accordance with the Smith process, without leave of the patentee or his assignee, after being advised by its counsel of probable infringement. The enlargement of its infringing operations is no more attributable to Smith or the plaintiff than was the original infringement. The defendant contends that, had the suit been promptly brought, it would have had the benefit of the testimony of Heywood and Baggaley. But the former disappeared in 1913, and the latter died in 1915, and so before a defense of laches could have been successfully made. Even assuming that their testimony would have been of benefit to the defendant, which is far from clear, it is obvious that the subsequent delay in bringing the suit did not, so far as Heywood and Baggaley were concerned, change defendant's condition.

293 F.—8

I am of the opinion that the claims in suit are valid and infringed, and that this suit is not barred by laches. A decree in conformity herewith may be submitted.