## ROOT et al. v. JOHN T. ROBINSON CO.
### No. 3210.

District Court, D. Massachusetts.
April 8, 1931.

On Rehearing Aug. 18, 1931.

Ellis Spear, Jr., of Boston, Mass., Chas. F. Dane, of New York City, and Wm. F. Hall, of Washington, D. C., for plaintiff.

George P. Dike, Macleod, Calver, Copeland & Dike, and John W. Hoag, all of Boston, Mass., for defendant.

MORTON, District Judge.

This is a suit for alleged infringement of the patent to Root and Conn No. 1,131,-161, dated March 9, 1915, for safety devices on punching machines.

The patent relates to that class of machines in which a reciprocating part is brought powerfully against a fixed one, so as to squeeze or perforate the work which is interposed between them. All such machines are dangerous because of the possibility that the operative's fingers may be caught in the press or punch and severely injured. It occurred to Root and Conn that this danger could be avoided if one of said parts was so constructed as to yield to pressure until they were too close together for a finger to be inserted between them, and the yielding part then became locked so that it would withstand full pressure. It was a simple, but clever, idea. They applied it by making the link, through which the ro-

tary motion of the shaft was converted into the reciprocating motion of the striker, collapsible, i. e., the striker end of it was free to slide back on the link until just before the striker came into contact with the work, when, by a gag arrangement, the two parts of the link were locked together. The Court of Appeals for the Second Circuit has held the Root and Conn patent to be a valid, meritorious, pioneer patent. Root et al. v. Hobbs Manufacturing Co., 294 F. 236.

■ While that decision was reached on a less complete showing of the prior art than has been presented in this case, I am unable to see that the additional evidence changes the result. The Taylor patent which is strongly urged as an anticipation of Root and Conn does not show either their device or their inventive idea. There is a certain verbal similarity between two mechanisms, but nothing more. In the Taylor patent the striker mechanism is controlled by a movable block which is in effect a detector or feeler; the stamp operates only intermittently as permitted by the detector. The fact that the power of the machine is transmitted to the work through this detector-block in no way changes the principle involved; there is nothing "collapsible" about it. In the Root and Conn device the striker is always in motion with the shaft; the moving link telescopes if an obstruction is interposed; if not, it locks and delivers full power. I agree with Judge Mack's conclusion on this point [55 F.(2d) 301], on the motion to reopen Root v. Hobbs Manufacturing Co., supra.

In the defendant's ending-machine the yielding and locking mechanism is applied to the stationary member instead of to the reciprocating one. This construction equally embodies the invention of the patent and infringes the claims in suit, namely, 6, 19, and 21.

The other defenses, viz. whether the plaintiff's license from Root and Conn covered ending-machines, and whether the plaintiff is barred by laches or estoppel, present more difficult questions. They are new to the present case.

■ The defendant denies that Root and Conn ever gave to the plaintiff any license covering ending-machines, and asserts that the written license which the plaintiff holds misstates the true character of what was granted. It appears to be settled law that the parol evidence rule rests basically on estoppel, and therefore applies only between parties to the writing; and that persons not parties to a written instrument may show that it does not correctly state the agreement between the parties to it. "The rule excluding parol evidence to contradict a written instrument is not infringed when, as in the case before us, a third person, who does not claim under the written instrument, seeks to show that it was not the real contract between the parties." Carroll, J. Guaranty Security Corp. v. Eastern Steamship Co., 241 Mass. 120, 134 N. E. 364, 366. See, also, Wilson v. Mulloney, 185 Mass. 430, 70 N. E. 448; Lee v. Adsit, 37 N. Y. 78 at page 94; McMaster v. Insurance Co. of North America, 55 N. Y. 222, 14 Am. Rep. 239; Central Coal & Coke Co. v. George S. Good & Co. (C. C. A.) 120 F. 793, 798, cited with approval in Miller v. Robertson, 266 U. S. 243 at page 255, 45 S. Ct. 73, 69 L. Ed. 265.

■ The facts on this matter are as follows:

In September, 1914, before the patent had been issued, the patentees and the present plaintiff entered into a license agreement. It was canceled about four months later, but negotiations between parties were shortly afterwards resumed, and resulted in the present written agreement dated October 5, 1914. It is an exclusive license under the patent "for use in connection with paper box machines," i. e., on all paper box machines. Root and Conn testify in this proceeding that their contract with the Knowlton Company was not intended by the parties to it to cover anything but staying-machines. Passing by the preliminary negotiations, Root's account of the decisive interview is that Mr. Knowlton asked him how much the patentees wanted for the entire patent; Root said, $65,000; Knowlton immediately declined that suggestion, and asked Root how much he wanted for staying-machines only; Root replied by asking Knowlton how much he thought it worth for them; Knowlton answered $8,000; long bargaining followed; and in the end it was finally agreed that the Knowlton Company would pay the patentees $2,500 in cash and further royalties to the amount of $20,000 more for the license on staying-machines only. Conn testifies to the same effect. Coss is dead. This testimony is not contradicted. Neither Mr. Knowlton nor Mr. Dane, the latter of whom sat in court during the entire case, has been called by the plaintiff —a very weighty circumstance in the defendant's favor. On September 10, 1914, Mr.

Coss, attorney for the patentees, wrote to Mr. Dane, attorney for the Knowlton Company in the negotiations: "He (Mr. Root) is very much out of patience with the delay incident to either closing up a contract relative to Safety Devices for Staying-machines with your client, the M. D. Knowlton Company, or calling off the matter entirely." This very plainly states to the plaintiff the crux of the contract, as Root says he understood it was made, and, being not long before the final interview, further tends to support Root's testimony as to what was agreed upon. There is no evidence that a license for box-making machinery, generally, was ever discussed. At that time the Knowlton Company made no machines in which this device could be used except staying-machines, and it might well have been interested in the patent—which it had refused to buy outright—only as it affected the machines which it was then manufacturing.

As to the signing of the license, Root testifies that the paper was drawn by Mr. Coss and Mr. Dane to carry out the agreement which had been arrived at; that it was presented for signature at the end of wearisome conferences; that he undertook to read it and saw that it was beyond his depth, that he turned to Coss and said it was up to him to see that they were getting the contract they had talked over, and thereupon signed it. It is clear that Root then understood the agreement to have been as he now testified, for he wrote to Coss about ten days afterwards, "Am mighty glad we gave K. a license for the Stayer only in this last contract, for now we have all the other fields to ourselves."

While the claim made by the defendant is very unusual both in law and in fact, and is of such character as naturally would be viewed with suspicion and the defendant held to strict proof, the evidence presented is unusually complete—direct uncontradicted testimony by Root and Conn supported by contemporaneous letters the authenticity of which is not questioned, and by the defendant's failure to call as witnesses the persons who participated in the negotiations on its behalf. On all the evidence, I find that the testimony of Root and Conn as to the agreement which was actually made is substantially true, that it was intended to be limited to staying-machines, and that the broader scope of the written license was due to a mistake in reducing the oral agreement to writing.

If the defendant were claiming under Root and Conn, it would be barred from setting up this defense by the estoppel against its assignors, who would not be heard to repudiate their written agreement. The defense does not, however, depend upon the later license attempted to be granted to the defendant by Root and Conn; it rests on the denial that the plaintiff acquired exclusive rights under the patent broad enough to cover ending-machines. I am aware of no rule of law which precludes the defendant from availing itself of the testimony of Root and Conn in support of its denial of the plaintiff's title. It follows that the bill must be dismissed.

It should perhaps be stated that, while the hearings were in progress, I supposed that oral evidence was not admissible to vary the written license, and so expressed myself. The decisions above cited and the principle on which they rest were not called to my attention until later in the defendant's brief. When that was done, I informed both parties that any further evidence of that character which either desired to offer would be admitted. Both counsel notified me that they did not desire to offer such further evidence.

As to laches: As what has been said is sufficient to dispose of the case, it is unnecessary to state in full the rather complicated relations and transactions between the plaintiff and the defendant on which this defence of laches is based. "Laches is not like limitation, a mere lapse of time, but is principally a question of the inequity of permitting a claim to be enforced because of some change in the condition or relations of the parties or the property." Morris, J., Peirce-Smith Converter Co. v. United Verde Copper Co. (D. C.) 293 F. 108, 113. Applying this test, the present case is close to the line. The plaintiff suggested to the defendant that it put a safety device on ending machines; it knew that the defendant was doing so in a form which infringed the Root and Conn patent; for several years the plaintiff made no objection to this course of business by the defendant, but, on the contrary, bought machines from the defendant and resold them to its own trade. In my opinion, the plaintiff is not entitled to collect damages or profits as to the machines put out by the defendant during this interval. But I do not think that the plaintiff has so led on the defendant as to be precluded from insisting on its exclusive rights under the patent—if it has them—for

box-making machinery. And on all the evidence I so find and rule.

Decree dismissing bill, with costs.

### On Motion for Rehearing.

I have carefully considered the plaintiff's petition for rehearing. It suggests no point which was overlooked in the decision nor as to which I now feel that my conclusion was wrong. I fully appreciate the objections against permitting a written instrument to be varied by oral testimony. As appears in the opinion at the hearing, I was so strongly of opinion that such evidence could not be received, and I expressed myself so decisively to that effect, that when, after an examination of the authorities, I became convinced I had been wrong, I intimated to counsel that the case would be reopened if either side desired to introduce further evidence on that point. Both sides informed me that they did not desire to do so. The plaintiff elected to let the case stand on the defendant's testimony as to what the oral agreement really was. Mr. Dane had been a participant in the conversations to which the defendant's witnesses testified. When the plaintiffs elected not to call him or Mr. Knowlton after having had every opportunity to do so, and having been apprised of the possible importance of the point, I assumed—I think quite justifiably—that the plaintiff's witnesses were not called because their testimony would not contradict that of the defendant's witnesses. Even now no affidavit is filed showing such contradiction. While I much prefer never to put or to leave in an opinion any unnecessary remark or finding which may embarrass counsel, in this case I cannot in justice to the defendant delete the reference to the plaintiff's failure to call Mr. Dane or Mr. Knowlton.

Petition denied.